**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

VICKIE WALLACE,  :

                Plaintiff,

-vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,
                Defendant.  :

Case No. 3:08-cv-405

District Judge Walter Herbert Rice
Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1381(c)(3) as it incorporates §405(g), for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v.*

*Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

To qualify for supplemental security benefits (SSI), a claimant must file an

application and be an "eligible individual" as defined in the Social Security Act. 42 U.S.C. §1381a. With respect to the present case, eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. §1382(a). To establish disability, a claimant must show that the claimant is suffering from a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §1382c(a)(A). A claimant must also show that the impairment precludes performance of the claimant's former job or any other substantial gainful work which exists in the national economy in significant numbers. 42 U.S.C. §1382c(a)(3)(B). Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the claimant files an SSI application. *See,* 20 C.F.R. §416.335.

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520 . First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1 (1990). If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the

Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed an application for SSD on April 30, 2002, alleging an onset date of June 5, 2001, due to anxiety, depression, back and hip pain, and a gastrointestinal disorder *See* Tr. 183-85; 202. Plaintiff's application was denied initially on October 21, 2002, and she took no further appeal. *See* Tr. 160-61.

Plaintiff filed applications for SSD and SSI on February 5, 2004, alleging disability from June 5, 2001, due to panic and anxiety attacks, drug and alcohol dependence, and depression. *See* Tr. 186-88; 923-25; 236. Plaintiff's applications were denied initially and on reconsideration. *See* Tr. 158-59, 162-70, 927-36. A hearing was held before Administrative Law Judge James Knapp, (Tr. 96-134)[1], who determined that Plaintiff is not disabled. (Tr. 22-45). The Appeals Council denied Plaintiff's request for review, (Tr. 7-9), and Judge Knapp's decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Knapp found that she met the insured status requirements of the Act through June, 2006. (Tr. 43, finding 1). Judge Knapp also found that Plaintiff has severe mild lumbar arthritis, depressive syndrome, substance abuse in current remission, and, since October, 2005, Hepatitis C, but that she does not have an impairment or combination of impairments that meets or equals the Listings. *Id*., findings 3 and 4. Judge Knapp found further that Plaintiff has the residual functional capacity to perform a limited range of medium work. (Tr. 44, finding 6). Judge Knapp then used sections 203.18 and 203.25 of the Grid as a

---

[1] The record contains transcripts of a January, 2002, and a July, 2007, hearing, pertaining to a different claimant, also named Vicki Wallace. *See* Tr. 54-95, 135-54. The Court has therefore redacted pages 54 through 95 and pages 135 through 154 from record in this case. *See* Motion to Redact and Notation Order thereon. (Doc. 7).

4

framework for deciding, coupled with a vocational expert's testimony, and found there is a significant number of jobs in the economy that Plaintiff is capable of performing. *Id.*, findings 12 and 13. Judge Knapp concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. (Tr. 45, finding 14).

In her Statement of Errors, Plaintiff does not challenge the Commissioner's findings with respect to her alleged exertional impairments. (Doc. 10). Accordingly, the Court will focus its review of the medical evidence on Plaintiff's alleged mental impairments.

The record contains a copy of Plaintiff's treatment notes from the Counseling Association of Central Florida dated November, 2001, to March, 2002. (Tr. 329-36). Those notes reveal that Plaintiff received counseling at that facility for a major depressive disorder and a generalized anxiety disorder. *Id.*

Plaintiff was hospitalized January 12-19, 2004, after she expressed strong feelings that she wanted to be dead as well as other depressive symptoms including a sense of guilt, fatigue, loss of appetite, and sleep difficulty. (Tr. 368-87). At the time she was admitted, it was noted that Plaintiff had been using methamphetamines on a regular basis although she had not used for the two weeks prior to admission, and that she had a history of alcohol and cannabis abuse. *Id.* Plaintiff was treated with medication and counseling and discharged with the diagnoses of mood disorder NOS, methamphetamine dependency, and borderline and antisocial traits. *Id.*

The record contains a copy of Plaintiff's voluminous treatment notes from TCN Behavioral Health Services dated January 19, 2004, through June 13, 2006. (Tr. 440-561; 606-31; 673-915). At the time of her initial assessment it was noted that Plaintiff was homeless, but staying with her sister or daughter and that she reported a history of substance abuse but that she had been

5

sober for the last thirty days. *Id.* It was also noted that Plaintiff exhibited confused thinking, a blunted affect and depressed mood, and that she reported that she had auditory hallucinations. *Id.* Plaintiff's diagnoses were identified as depressive disorder NOS and polysubstance dependence. *Id.* Plaintiff was referred for Community Support Services and medical-somatic services, which included a psychiatric evaluation by Dr. Halley. *Id.* Dr. Halley reported on January 27, 2004, that Plaintiff's affect was again blunted and her cognition was impaired, that she had paranoid thoughts and feared people were talking about her, and that she appeared confused. *Id.* Dr. Halley identified Plaintiff's diagnosis as mood disorder NOS. *Id.*

During the period February, to April, 2004, Plaintiff attended group therapy through an adult partial hospitalization program (APH) four times a week and she continued to report problems with auditory/visual hallucinations to Dr. Halley. *Id.* Dr. Halley reported on March 8, 2004, that Plaintiff's mood was often depressed and her affect was normal to flat, depending on her mood, that she was sometimes hostile and anxious, and that she appeared fidgety and shaking. *Id.* Dr. Halley reported Plaintiff's thought processes were often confused with loose associations, she had trouble with short-term memory, difficulty concentrating for long periods of time, and often demonstrated illogical reasoning. *Id.* Dr. Halley identified Plaintiff's diagnoses as mood disorder and polysubstance dependence and he opined that Plaintiff's low motivation and a short attention span interfered with her ability to complete most tasks. *Id.* Dr. Halley noted that Plaintiff tended to isolate herself and it took her longer to adapt to new situations. *Id.*

On April 15, 2004, Plaintiff sought emergency room treatment for depression and suicidal ideation. (Tr. 391-96). At that time, it was noted that Plaintiff's speech was slightly thick, she was oriented to person, place, and time, had intact insight and judgment, and that there were no

6

signs of hallucinations or delusions. *Id.* Plaintiff was treated with medication and discharged the next day. *Id.*

Plaintiff continued to receive psychiatric care from Dr. Halley at TCN. (Tr. 440-561; 606-31; 673-915). On April 21, 2004, Dr. Halley noted that Plaintiff continued to have suicidal thoughts and that her cognition was impaired and on May 5, 2004, Dr. Halley reported that Plaintiff's mood and affect were depressed and that she had poor insight and judgment. *Id.* Treatment notes from TCN during the period May and June, 2004, reveal that Plaintiff was re-admitted to the APH program and that she failed to attend as scheduled and missed appointments to get her medications. *Id.*

Plaintiff received emergency room treatment on June 27, 2004, for complaints of depression and thoughts of not wanting to live. (Tr. 401-20). At that time, it was noted that Plaintiff was "somewhat depressed." *Id.* Drug screen testing was positive for cocaine, marijuana, and opiates. *Id.* Plaintiff was discharged after meeting with a case manager with instructions to follow up with TCN. *Id.*

Plaintiff's treatment notes from TCN during the period July, 2004, to March, 2005, reveal that Plaintiff missed scheduled appointments, laboratory work, and court dates related to a DUI charge. (Tr. 440-561; 606-31; 673-915). Plaintiff's community support specialist noted in July, 2004, that Plaintiff admitted to an alcohol and drug relapse and that she admitted she had been avoiding SAMI (substance abuse and mental illness program) even though she had agreed to attend. (Tr. 440-561; 606-31; 673-915). Plaintiff attended APH intermittently in September and October, 2004, and in late October, 2004, Plaintiff's mental health care providers reported Plaintiff as non-compliant with her therapy and off her medications. *Id.* It was noted that Plaintiff had increased

7

depression, suicidal ideation and paranoia, and that she reported hearing voices and seeing things. (Tr. 440-561; 606-31; 673-915).

On July 14, 2004, Dr. Halley reported that Plaintiff continued to show a depressed mood with thought content positive for paranoia. *Id.* Dr. Halley noted that Plaintiff continued to show poor insight and judgment. *Id.*

Dr. Halley reported on May 6, 2005, that he had been treating Plaintiff since January 27, 2004, for psychotic disorder, NOS, major depressive disorder, and polysubstance dependence. (Tr. 440-52). Dr. Halley also reported that Plaintiff was "unable to function in any meaningful consistent manner" and that she would be unable to perform the mental demands of work even without considering substance abuse issues. *Id.* Dr. Halley noted that Plaintiff would have moderate restrictions in her activities of daily living, moderate difficulties maintaining social functioning, and extreme deficiencies of concentration, persistence and pace. *Id.* Dr. Halley also noted that Plaintiff had poor or no ability to deal with the public, interact with supervisors, deal with work stresses, function independently, maintain attention/concentration, understand, remember, and carry out complex job instructions, and demonstrate reliability. Tr. 450-52. Dr. Halley noted further that Plaintiff had only a "fair" ability in most other areas of functioning. *Id.*

The medical adviser (MA) testified at the hearing that Plaintiff was very non-compliant with both medications and treatment appointments, that there was no psychological testing data in the record, that based on her presentation at the hearing she should be limited to independent tasks, and that she should not deal with the public, that she was moderately limited in her ability to concentrate, and that she would be restricted to low stress work. (Tr. 118-28). The MA also testified that there was not enough information in the record for her to determine if

8

Plaintiff's bipolar disorder or a depressive disorder were impacting how she complied with treatment but that it was a "reasonable assumption" that Plaintiff's depressive disorder could be impacting her compliance with treatment. *Id.*

On June 13, 2005, at a post-hearing court-ordered assessment at TCN, it was noted that Plaintiff had been at TCN six months ago but was unable to continue due to "health problems", and that Plaintiff reported that she had last used methamphetamines in December, 2003, cocaine and pot in May, 2004, and alcohol in October, 2004. (Tr. 840-53) At the time of that assessment, it was noted that Plaintiff appeared withdrawn and mistrustful, that she reported persecutory thoughts, auditory and visual hallucinations, her mood was depressed, and that her affect was flat. *Id.* It was also noted that Plaintiff appeared agitated, her attention was impaired, she appeared unfocused in the assessment, and that she appeared to be motivated only by the court. *Id.* Plaintiff's diagnoses were identified as polysubstance dependence and psychotic disorder NOS and she was assigned a GAF of 45. *Id.* The evaluator opined that Plaintiff needed long-term dual diagnosis substance abuse/mental illness treatment (SAMI). *Id.*

Plaintiff continued treatment at TCN, including attendance at SAMI, individual therapy, and working with a community support specialist, and she continued to have intermittent attendance at group therapy, and with her community support specialist. (Tr. (Tr. 818-37; 793-804). In January, 2006, Plaintiff was discharged from SAMI due to frequent absences but her therapist stated they could continue one-on-one. (Tr. 913). Plaintiff continued to meet with her counselor, a community support specialist, and Dr. Halley and intermittently missed appointments. (Tr. 875-90; 606-09).

Plaintiff alleges in her Statement of Errors that the Commissioner erred by rejecting

9

the opinion of her treating psychiatrist Dr. Halley and by improperly relying on the MA's opinion. (Doc. 10). Plaintiff's position seems to be that the Commissioner was required to give Dr. Halley's opinion great or even controlling weight simply because he was her treating mental health care provider. *Id.* In addition, Plaintiff argues that the Commissioner failed to completely evaluate the post-hearing evidence. *Id.*

In assessing the medical evidence supporting a claim for disability benefits, the ALJ must adhere to certain standards. *Blakley v. Commissioner of Social Security,* 581 F.3d 399 (6th Cir. 2009). One such standard, known as the treating physician rule, requires the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians because

> these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone of from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Id.* at 406, *quoting*, *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544, (6th Cir. 2004), *quoting,* 20 C.F.R. § 404.1527(d)(2).

The ALJ "must" give a treating source opinion controlling weight if the treating source opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Blakley, supra, quoting, Wilson, supra.* On the other hand, a Social Security Ruling[2] explains that

---

[2] Of course, although Social Security Rulings do not have the same force and effect as statutes or regulations, "[t]hey are binding on all components of the Social Security Administration" and "represent precedent, final opinions and orders and statements of policy" upon which the agency relies in adjudicating cases. 20 C.F.R. § 402.35(b).

"[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record." *Blakley, supra, quoting,* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *2 (July 2, 1996). If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician. *Blakley, supra, citing, Wilson, supra.* and 20 C.F.R. § 404.1527(d)(2).

Closely associated with the treating physician rule, the regulations require the ALJ to "always give good reasons in [the] notice of determination or decision for the weight" given to the claimant's treating source's opinion. *Blakley,* 581 F.3d at 406, *citing,* 20 C.F.R. §404.1527(d)(2). Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Blakley,* 581 F.3d at 406-07,*citing,* Soc.Sec.Rule 96-2p, 1996 WL 374188 at *5. The *Wilson* Court explained the two-fold purpose behind the procedural requirement:

> The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied. *Snell v. Apfel,* 177 F.3d 128, 134 (2nd Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.

11

*Blakely,* 581 F.3d at 407*, citing, Wilson,* 378 F.3d at 544. Because the reason-giving requirement exists to ensure that each denied claimant received fair process, the Sixth Circuit has held that an ALJ's "failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight" given "*denotes a lack of substantial evidence,* even where the conclusion of the ALJ may be justified based upon the record." *Blakely, supra, quoting, Rogers v. Commissioner of Social Security.,* 486 F.3d 234, 253 (6th Cir. 2007)(emphasis in original).

  Judge Knapp declined to give controlling, deferential, or other preferential weight to Dr. Halley's opinion on the bases that it is not supported by proportionate objective findings in the record, and it is contradicted by other substantial evidence in the record, the opinion of the MA and the treatment records from TCN. (Tr. 35). Judge Knapp further noted Dr. Halley's opinion lacked sufficient supportability and consistency. *Id.*

  As noted above, Dr. Halley essentially opined in May, 2005, that Plaintiff would have moderate restrictions in her activities of daily living; moderate difficulties maintaining social functioning and extreme deficiencies of concentration, persistence and pace. (Tr. 440-49). However, as Judge Knapp noted, the voluminous treatment notes from TCN do not support Dr. Halley's conclusions. For example, although some of the clinical notes indicate that Plaintiff occasionally reported increases in her depression, the notes contain few, if any, observations by Dr. Halley, or by Plaintiff's therapist, of marked symptoms. While the clinical notes also indicate that Plaintiff often appeared nervous, crying, or upset, her mental health care providers described her as pleasant and cooperative. In addition, although the clinical notes indicate that Plaintiff reported paranoid thinking as well as visual and auditory hallucinations, those symptoms were entirely self-

reported. None of the mental health care providers of record documented any direct observation of those symptoms.

Dr. Halley's opinion is also inconsistent with the other evidence of record. For example, the reviewing psychologists opined that Plaintiff is, at worst, moderately impaired. (Tr. 403-19). Moreover, as noted above, the MA testified that Plaintiff is capable of performing independent tasks that do not involve dealing with the public and which are low stress and that she is moderately limited in her ability to concentrate.

Contrary to Plaintiff's argument, the Commissioner was not required to give Dr. Halley's opinion controlling, or even great, weight simply because he is Plaintiff's treating psychiatrist. Indeed, under these facts, the Commissioner had an adequate basis for rejecting Dr. Halley's opinion.

Plaintiff also argues that the Commissioner erred by failing to completely evaluate the post-hearing evidence. However, a review of Judge Knapp's decision reveals that he carefully reviewed and considered the post-hearing evidence. *See,* Tr. 38-41. Indeed, those post-hearing treatment records are based on Plaintiff's self-reported symptoms and contain few, if any, objective findings by Plaintiff's mental health care providers. Although Plaintiff suggests that the "new diagnosis" of psychosis NOS appears in these post-hearing notes, as Judge Knapp noted, Dr. Haller included that diagnosis in his May, 2005, report. Accordingly, that is not a new post-hearing diagnosis. Additionally, the presence of a diagnosis alone is never conclusive evidence of disability. *See, Young v. Secretary of Department of Health and Human Services,* 925 F.2d 146 (6th Cir. 1990). The mere diagnosis of an impairment does not indicate the severity of the condition nor the limitations, if any, that it imposes. *Id.*

13

Our duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

December 1, 2009.

*s/ Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).